# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### CIVIL CASE NO. 3:06cv286

| | | |
|---|---|---|
| **AMATULLI & SONS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **GREAT NORTHERN INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

**THIS MATTER** is before the Court on Defendant's Motion for Partial Summary Judgment [Doc. 24], filed on June 27, 2007; the Defendant's Motion to Strike Portion of Affidavit and Portions of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment [Doc. 39], filed on August 13, 2007; and the Defendant's Motion for Summary Judgment [Doc. 54], filed on November 30, 2007.

**I.     Introduction**

This is an action for recovery under a commercial insurance policy. On May 30, 2006, the Plaintiff Amatulli & Sons, LLC (Amatulli) filed this action in the General Court of Justice, Superior Court Division, for Mecklenburg County against the Defendant Great Northern Insurance Company (Great Northern), asserting claims for breach of contract and unfair and deceptive trade practices under North Carolina law.[1]   On July 12, 2006, the Defendant removed the action to this court.  The jurisdiction of this Court pursuant to 28 U.S.C. § 1332 is not in dispute.

On August 2, 2006, the Defendant filed an answer, denying the Plaintiff's claim and asserting a counterclaim for a declaratory judgment to the effect that the Defendant has no obligation to provide insurance coverage the Plaintiff under the policy or alternatively, that if coverage exists, it is limited by the terms of the policy and by the common law.

On June 27, 2007, the Defendant filed a Motion for Partial Summary Judgment on the grounds that the Plaintiff's claim for a loss was previously adjudicated and thus is barred by collateral estoppel.  The Plaintiff filed a

---

[1]The Plaintiff also brought suit against Chubb Group of Insurance Companies (Chubb).  The Plaintiff voluntarily dismissed its claims against Chubb on August 14, 2006.

Memorandum in Opposition on July 23, 2007,[2] and the Defendant filed a Reply on August 13, 2007.

On September 19, 2007, this matter was reassigned to the undersigned. On October 1, 2007, the Court granted the parties' joint request for an extension of the discovery deadline to November 30, 2007. On October 10, 2007, an Order was entered granting the parties' joint request for an extension of the dispositive motions deadline to November 30, 2007. An Amended Pretrial Order was entered on October 25, 2007, setting this matter for trial during the Court's February 11, 2008 mixed term. On November 14, 2007, the Defendant requested a limited extension of the discovery deadline and corresponding extension of the dispositive motions deadline as well as the trial date. The Court granted the Defendant's request to extend the discovery deadline for the limited purpose of taking the deposition of one witness but denied the requests for continuation of any other deadlines, including the trial date.

On November 30, 2007, the Defendant filed a Motion for Summary Judgment, arguing that the Defendant is entitled to summary judgment on

---

[2]The Plaintiff's Memorandum in Opposition appears twice in the record as Document 30 and Document 31. As these Memoranda appear to be duplicates, the Court will refer only to Document 30.

the grounds that the Plaintiff's claims are barred by the applicable statutes of limitations. Alternatively, the Defendant contends that the Plaintiff's claims fail as a matter of law because the evidence fails to establish that the Defendant breached the insurance contract, acted in bad faith, or committed any unfair or deceptive trade practices.

Plaintiff's response to the Motion for Summary Judgment was due on December 17, 2007. On the day that the deadline for responding expired, the Plaintiff moved for an extension of time to respond until December 30, 2007. The Court granted Plaintiff's request, but despite the extension of time, Plaintiff never filed a response to the Defendant's Motion.

## II.    The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact rests with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  Id. at 248.  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

Plaintiff has failed to respond to the Defendant's Motion for Summary Judgment, and therefore, the facts presented by the Defendant with respect to that motion are not in dispute. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'" <u>Custer v. Pan American Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993). "Therefore, even when the adverse party fails to respond to the motion for summary judgment, the court must review the motion and the materials before the court to determine if the moving party is entitled to summary judgment as a matter of law." <u>Meyer v. Qualex, Inc.</u>, 388 F. Supp. 2d 630, 634 (E.D.N.C. 2005); <u>see also</u> Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.") (emphasis added).

## III.   Motion to Strike

Before reaching the merits of the Defendant's summary judgment motions, the Court will first address the Defendant's motion to strike

portions of Richard Amatulli's Affidavit.  The Defendant argues that certain

statements in the Affidavit are conclusory and are made without a specific

factual basis or personal knowledge.  The Defendant further contends that

there are inadmissible statements of opinion and hearsay, as well as

statements which conflict with Amatulli's previously sworn testimony.  The

Plaintiff has not filed any opposition to the Defendant's motion.

"Generally, an affidavit filed in opposition to a motion for summary

judgment must present evidence in substantially the same form as if the

affiant were testifying in court."  Evans v. Technologies Applications &

Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).  The affidavit must be made on

personal knowledge and contain admissible evidence.  See Fed. R. Civ. P.

56(e) ("A supporting and opposing affidavit must be made on personal

knowledge, set out facts that would be admissible in evidence, and show

that the affiant is competent to testify on the matters stated.").  Thus, the

affidavit may not be based on hearsay.  See Maryland Highways

Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1251 (4th Cir.), cert.

denied, 502 U.S. 939 (1991).  Conclusory statements set forth in affidavits

must also be disregarded.  See Rohrbough v. Wyeth Labs, Inc., 916 F.2d

970, 975 (4th Cir. 1990) (affirming trial court's disregard of doctor's affidavit

which was "nearly entirely conclusory and devoid of specific facts to support his opinion").

Having reviewed Amatulli's Affidavit, the Court concludes that several portions of the Affidavit should be stricken. In paragraph 15 of his Affidavit, Amatulli states that he was "forced to initiate a law suit [sic] against Steve Ikerd seeking injunctive relief, claim and delivery, and damages in order to protect the property of Amatulli & Sons and Classic Management and to preserve my rights under my insurance policy with the [Defendant]." [Amatulli Aff. at ¶ 15]. This statement is conclusory, as Amatulli fails to state any specific facts to support his assertion that he was "forced" to bring a lawsuit against his landlord in order to preserve any rights under the subject insurance policy.

Amatulli states in his Affidavit that the jury in the case of <u>Classics Management Group v. Steve Ikerd</u> was "unable to ascertain the full amount of damages and therefore only awarded $1.00 in compensatory damages." [Amatulli Aff. at ¶ 18]. Amatulli, however, fails to set forth any specific facts to support this assertion. Indeed, a review of that Judgment shows that it plainly states that the jury *was* able to ascertain the full amount of damages. The Judgment states, in pertinent part, as follows:

3. Was the Plaintiff's property damaged by the negligence of Defendants?
**Answer: Yes**

4. What amount is the Plaintiff entitled to recover from the Defendants for negligent damage to its property?
**Answer: $1**

\*     \*     \*

7. Did the Defendants do at least one of the following?

a. Without notice of consent, move all of Plaintiff's furniture, rugs, accessories and other assets from the showroom to a storage warehouse and damage same in the process.
**Answer: No**

b. With disregard of the rights of the Plaintiff and with disregard of the property of the Plaintiff, remove, damage, and store Plaintiff's furniture in such a manner as to irreparably damage Plaintiff's property.
**Answer: No**

c. Fail to return Plaintiff's records, books and computer software after a demand by Plaintiff, which items had no economic value or benefit to Defendant, for the purpose of causing extreme hardship and economic loss to Plaintiff.
**Answer: No**

[Doc. 25, Ex. J to Defendant's Motion for Partial Summary Judgment]. As the Judgment clearly demonstrates, the jury in Classics v. Ikerd made

specific factual findings regarding the damage suffered by Classics Management Group and awarded $1.00 in compensatory damages. Amatulli's statement that the jury was somehow "unable to ascertain the full amount of damages" is a conclusory statement that is completely without factual support and therefore will be stricken.

Amatulli further states in paragraph 18 of his Affidavit that his property continued to be damaged after the trial. Specifically, he asserts that "[w]hen [he] examined the goods at Prestige they were simply thrown in a large pile *and I therefore concluded that additional and continuing damage was occurring to my personal property and that many of the items were continuing to disappear.*" [Amatulli Aff. at ¶ 18] (emphasis added). Amatulli does not state a factual basis for his conclusions that additional damage was incurred or that "many" items continued to disappear. Merely viewing his property "in a large pile" is not a sufficient factual basis to make such statements. Accordingly, these conclusory and speculative assertions shall be stricken.

Also in paragraph 18, Amatulli asserts that there is a dispute as to the amount of his personal property loss. Specifically, he takes issue with the inventory conducted on behalf of the Defendant by Comprehensive

Inventories, asserting that "Comprehensive Inventories is only qualified to do inventory counts.  They are not qualified to access [sic] the value of antique furniture or damages." [Amatulli Aff. at ¶ 18].  Amatulli offers no specific evidence, however, in support of these conclusory statements and makes no attempt to explain the basis for his opinions regarding the qualifications of Comprehensive Inventories as appraisers.  Because Amatulli cannot show affirmatively that he is "competent to testify" to these matters, as required by Rule 56(e), the Court will strike these statements as well.

In paragraph 19 of his Affidavit, Amatulli states that the payment of $41,295.87 by the Defendant was "both unreasonable and not supported by evidence of [his] damages." [Amatulli Aff. at ¶ 19].  Additionally, he states that the Defendant's "offer to pay approximately $42,000.00 in my case is an admission on their behalf that the case has value [in] excess of the $1.00 verdict." [Id.].  In paragraph 20, Amatulli states that the Defendant's actions "amount to bad faith under the laws of North Carolina by not making a reasonable and prompt payment on the loss well before it ever came to a jury trial . . . ." [Id. at ¶ 20].  In all of these statements, the Plaintiff confuses argument with evidence.  All of these statements are

purely conclusory opinions; they are arguments one would hear made to a jury. What Amatulli's Affidavit lacks are the statements of *fact* upon which such inferences can be argued. Accordingly, these statements shall also be stricken.

The Defendant seeks to have other statements in Amatulli's Affidavit stricken on the basis that these statements constitute inadmissible hearsay. Specifically, the Defendants challenge Amatulli's assertions that he was informed by a former Classics employee that "some of [his] inventory and items in the showroom were disappearing," [Amatulli Aff. at ¶ 10]; that he was advised by his insurance agent to submit a claim, [id. at ¶ 11]; and that he was advised by his insurance agent that he could not release Ikerd from liability without prejudicing his claim under the Defendant's insurance policy, [id. at ¶ 14]. The Court agrees such statements would constitute hearsay if they were submitted for the purpose of proving the matters asserted therein. See Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). However, as the Court will not consider such

statements as proving the truth of the matters asserted, the Defendant's request to strike these statements will be denied.

Finally, in paragraph 5 of his Affidavit, Amatulli attempts to distinguish Classics Management LLC and Amatulli & Sons LLC as "separate and distinct legal entities and not the altar [sic] ego of another" and that the two entities "[a]t all times . . . maintained an arms length relationship between the two companies." [Amatulli Aff. at ¶ 5]. Amatulli's assertions by Amatulli are impermissible legal conclusions and therefore should be stricken. Even if the Court did consider these statements, however, they do not create a genuine issue of fact precluding summary judgment in this case. This affidavit testimony is contradicted by Amatulli's earlier sworn examination under oath, in which Amatulli states that in July, 1999, he sought to add Classics to the Defendant's insurance policy because Amatulli & Sons, LLC was "absorbing" Classics and that "everything is now under the control of Amatulli & Sons . . . ." [Doc. 25, Ex. A, Amatulli EUO at 145]. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Rohrbough, 916 F.2d at 975. Thus, even if the Court were to consider these statements, such

evidence may not be used by the Plaintiff to create a factual dispute requiring the relationship of these two corporate entities.

For the foregoing reasons, the Court determines that portions of paragraphs 5, 15, 18, 19, and 20 of the Richard Amatulli's Affidavit are improper and shall be stricken.

These portions of Amatulli's Affidavit, however, are not the only inadmissible evidence presented in this record. In support of its motions for summary judgment, the Defendant has submitted numerous letters and other documents which were purportedly produced by the parties in the course of discovery. These documents, however, are not attached to any type of sworn affidavit or testimony. "It is well settled that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). For such documents to be admissible at the summary judgment stage, they "must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2722 (3d ed. 1998). "In particular, a letter 'must be attached to an affidavit

and authenticated by its author in the affidavit or a deposition.'" <u>Orsi</u>, 999 F.2d at 92 (quoting Wright & Miller § 2722).

In the present case, none of the aforementioned letters and documents offered by the Defendant were accompanied by affidavits, and none of them have been properly authenticated by their respective authors. While it appears to the Court that some of these documents may have been discussed in the depositions of Eddie Sallie and Richard Amatulli, none of the submitted documents contain any indication that they were actually introduced as exhibits in these depositions. Thus, these documents have not been properly authenticated. Moreover, many of these documents appear to be hearsay. While some of the documents appear as though they may be admissions of a party opponent or may otherwise fall within certain recognized exceptions to the hearsay rule – for example, as records of regularly conducted activity under Federal Rule of Evidence 803(6) – no effort has been made to show that any such exception applies.

Plaintiff, however, has not challenged any of the evidence proffered by the Defendant. No objection has been made to consideration of such evidence, nor has the Plaintiff moved to strike the Defendant's filings. As

such, the Plaintiff has waived any objection that it may have had to the consideration of such evidence. See Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 718 (4th Cir. 1995) (failure to challenge admissibility of affidavits submitted in support of motion for summary judgment resulted in waiver of any objections). Accordingly, the Court may, to a limited extent, consider the evidence submitted in support of the Defendant's Motion for Summary Judgment.

## IV. Facts

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite the relevant facts in the light most favorable to the Plaintiff, drawing all reasonable inferences in its favor.

### A. The Insurance Claim

The Defendant issued the Plaintiff Amatulli & Sons, LLC, a policy of insurance, Policy Number 3536-54-16, with effective dates of October 5, 1998 to October 5, 1999. [Doc. 25, Ex. A, Amatulli's Examination Under Oath (Amatulli EUO) at 4; Ex. B, Plaintiff's Response to Interrogatory No. 1].

The Plaintiff Amatulli & Sons, LLC, is a limited liability company organized under the laws of the state of Connecticut for the purpose of

retail sales of new and antique rugs, furniture, and other related items. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 1]. In January, 1998, Richard Amatulli formed a separate limited liability company known as Classics Management Group, LLC (Classics). Classics was organized under the laws of the state of North Carolina for the purpose of purchasing and distributing antique and new furniture and related items. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 2]. At all times relevant to this civil action, Richard Amatulli was the sole owner of both Classics and the Plaintiff, Amatulli & Sons, LLC. [Doc. 25, Ex. A, Amatulli EUO at 23; Doc. 32, Ex. A, Amatulli Aff. at ¶ 3].

In order to generate operating capital, Classics obtained a business loan in the amount of $250,000 from the Bank of Granite. In order to provide collateral for this loan, Richard Amatulli transferred inventory from Amatulli & Sons to the Classics' showroom located in the Catawba Furniture Mall in Hickory, North Carolina. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 4]. On July 5, 1999, the manager of the Classics store died in an automobile accident. [Doc. 55, Ex. 5, Deposition of Richard Amatulli (Amatulli Dep.) at 61]. Consequently, Richard Amatulli decided to add the Classics inventory to the insurance policy held by Amatulli & Sons:

> [N]ow that I saw I would be taking that merchandise
> back to Connecticut, I would be absorbing that into
> – Classics now into Amatulli & Sons, because it
> was mine I would just make it all Amatulli & Sons, I
> called [Great Northern] up and told them what
> happened.  I said I have all these goods down here,
> I need to get them insured.

[Doc. 25, Ex. A, Amatulli EUO at 145].

On July 7, 1999, Richard Amatulli learned that Steve Ikerd, the landlord of the Catawba Furniture Mall, was alleging that Classics owed back rent and thus had changed the locks on the store and had seized Classics' property as collateral for the outstanding rent.  [Doc. 55, Ex. 5, Amatulli Dep. at 61].  On August 2 or 3, 1999, the landlord removed all property from the store, including inventory owned by the Plaintiff. [Id. at 106-07].

On August 18, 1999, Richard Amatulli sent a notice of loss to his insurance agent, Eddie Sallie, notifying him that certain property was stolen from his business location in Hickory, North Carolina and that he was taking legal action with regard to the alleged property loss.  [Doc. 55, Ex. 6, Aug. 18, 1999 letter from Richard Amatulli to Eddie Sallie ("Notice of Loss")].  The "legal action" referred to in the Notice of Loss was a civil action filed on August 11, 1999 in the General Court of Justice, Superior

Court Division, for Catawba County, North Carolina, against W. Steve Ikerd and Catawba Furniture Mall, LLC. [Doc. 25, Ex. D, <u>Classics v. Ikerd</u> Complaint].[3]

## B. The <u>Classics v. Ikerd</u> Litigation

In the <u>Classics v. Ikerd</u> Complaint, Classics claimed that its property, consisting of books, records, equipment, inventory, furnishings and other personal property was located at the showroom in the Catawba Furniture Mall, 377 Highway 70, Hickory, North Carolina until on or about August 3, 1999. [Doc. 25, Ex. D, <u>Classics v. Ikerd</u> Complaint at ¶¶ 6, 10]. Classics further alleged that on or about August 3, 1999, Steve Ikerd and/or Catawba Furniture Mall, LLC (collectively, Ikerd) removed all of Classics assets, consisting of "high-end imported furniture, Oriental rugs, and accessories" located at the Showroom and that removal of such assets likely caused "costly damage." [<u>Id.</u> at ¶¶ 21, 24]. In subsequent amendments to the Complaint, Classics additionally alleged that it was entitled to damages for diminution in value, any physical damages to the property, loss and theft of the goods, fair market value, and consequential

---

[3]Another entity, East West Collections, Inc., was also named as a defendant in this action; however, this defendant is not material to the present litigation.

damages. [Doc. 25, Ex. E, Classics' Amendment to Complaint; Ex. F,

Order Allowing Amendment].

On March 26, 2001, the jury returned a verdict in the <u>Classics v.</u>

<u>Ikerd</u> case, and Judgment was entered on April 15, 2001. [Doc. 26, Ex. J].

The jury made the following factual findings:

    1.    Did the Defendants convert property of
Plaintiff?
**Answer: No**

                       \*     \*     \*

    3.    Was the Plaintiff's property damaged by the
negligence of Defendants?
**Answer: Yes**

    4.    What amount is the Plaintiff entitled to recover
from the Defendants for negligent damage to
its property?
**Answer: $1**

                       \*     \*     \*

    7.    Did the Defendants do at least one of the
following?

    a.    Without notice or consent, move all of Plaintiff's
furniture, rugs, accessories and other assets from
the showroom to a storage warehouse and damage
same in the process.
**Answer: No**

    b.    With disregard of the rights of the Plaintiff and with
disregard of the property of the Plaintiff, remove,

damage, and store Plaintiff's furniture in such a manner as to irreparably damage Plaintiff's property.
**Answer: No**

c.   Fail to return Plaintiff's records, books and computer software after a demand by Plaintiff, which items had no economic value or benefit to Defendant, for the purpose of causing extreme hardship and economic loss to Plaintiff.
**Answer: No**

[Id.].  The jury further found that Classics owed Ikerd $29,548.76 under the lease agreement. [Id.].  No appeal was taken from the Judgment. [Doc. 25, Ex. A, Plaintiff's EUO at 204, 205].

Classics paid the judgment on April 25, 2001 and attempted to regain possession of the property from the landlord that same day. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 18; Doc. 55, Ex. 25, Motion for Amendment of <u>Classics v. Ikerd</u> Judgment].  Disputes between Amatulli and the landlord continued, however, and resulted in a delay of Plaintiff's possession of the property until May, 2001. [Doc. 55, Ex. 26, Supplemental Motion for Amendment of <u>Classics v. Ikerd</u> Judgment].

   **C.   The Claims Process**

Defendant assigned Anthony Hall as the adjuster to the Plaintiff's insurance claim. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 17; Ex. B, Hall Aff. at ¶

21

2].  The claims process began in 1999 with multiple letters and phone calls from Anthony Hall to Richard Amatulli and his insurance agent Eddie Sallie requesting documents and other materials to support the Plaintiff's claim. [See Doc. 55, Ex. 9, Oct. 6, 1999 letter from Hall; Ex. 10, Nov. 9, 1999 letter from Hall; Ex. 11, Jan. 10, 2000 letter from Hall].  During this time period, the Defendant made it clear that it was investigating the claim, and that any actions were taken with full reservations of rights under the policy. [Id.].

At the time that the Plaintiff presented the claim in August, 1999, Richard Amatulli did not know the physical location of the insured property. [Doc. 55, Ex. 5, Amatulli EUO at 183-86].  Amatulli did not discover the location of the property until April 2000.   [Id. at 186-87].  Hall did not examine the insured property until June 14, 2000, approximately ten months after the filing of the initial claim.  Hall observed the condition of the property, which was being stored in a warehouse, and took photographs. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 17].

The Defendant maintained that it could not make a decision on coverage prior to obtaining the necessary documentation from Amatulli, including an itemized inventory and documentation verifying the ownership

of the property. [Doc. 55, Exs. 9, 10, and 11]. The Plaintiff attempted to have an appraisal and inventory completed of the property, but as the property was constantly being moved around the warehouse, it was difficult for the appraiser to ascertain the damage to the inventory or determine whether any of the inventory was missing. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 17].

On January 9, 2001, Amatulli provided Hall with an inventory of the damaged property. [Doc. 55, Ex. 22, Inventory]. After reviewing the inventory, Hall requested additional documentation on January 31, 2001. [Doc. 55, Ex. 23, Jan. 31, 2001 letter from Hall to Amatulli]. There is no evidence in the record that Amatulli ever responded to the January 31 letter.

The Defendant subsequently retained the law firm of Cozen O'Conner to conduct Amatulli's examination under oath (EUO) in June, 2001. Cozen O'Conner requested that Amatulli bring certain documentation for his claim to the EUO. [Doc. 55, Ex. 12, June 5, 2001 letter from Daly to Amatulli]. Prior to the EUO, Amatulli provided some documentation of the Plaintiff's claim. Attorney Daly reviewed the documents and wrote a letter dated June 26, 2001 setting out the specific

information the Defendant needed in order to adjust the claim. [Doc. 55, Ex. 27, June 26, 2001 letter from Daly to Amatulli]. There is no evidence in the record that Amatulli ever complied with this request.

Following the EUO in June 2001, the Defendant retained Comprehensive Inventory Services, Inc. ("Comprehensive") to conduct an inspection and inventory of the claimed property damage. [Doc. 55, Ex. 13, Comprehensive Report]. Once the inspection occurred and Comprehensive issued its report, the Defendant issued an undisputed payment of $41,295.87 to Amatulli & Sons for the loss. The payment was made with full reservation of rights. [Doc. 55, Ex. 14, Aug. 12, 2001 letter from Hall to Amatulli]. Tom Fick, a regional manager for the Defendant, advised the Plaintiff that this did not represent a full payment, and no release was signed in exchange for the payment. [Doc. 32, Ex. A, Amatulli Aff. at ¶ 19].

By letters dated May 17, 2002, Amatulli accused the Defendant of not acting in a "forthright manner" and demanded a fair and honest settlement of his claim. [Doc. 55, Ex. 15, May 17, 2002 letter from Amatulli to Daly; Ex. 16, May 17, 2002 letter from Amatulli to Walt Nichols].

On May 22, 2002, Eddie Sallie, on behalf of the Plaintiff, issued a letter to Attorney Daly requesting that the Defendant act in good faith and work to resolve the claim. [Doc. 55, Ex. 17, May 22, 2002 letter from Sallie to Daly].

In a letter dated May 31, 2002, Attorney Daly set forth the Defendant's position that the Plaintiff had failed to document its claim and that the Defendant continued to reserve all rights and defenses according to the policy and applicable laws. [Doc. 55, Ex. 18, May 31, 2002 letter from Daly to Amatulli].  On July 15, 2002, Amatulli wrote another letter, accusing Great Northern of having "exercised 'Bad Faith' in the failed adjustment of the claim" and stating that he had "no other recourse but to pursue an appropriate legal remedy against [Great Northern]." [Doc. 55, Ex. 19, July 15, 2002 letter from Amatulli to Daly].

### D.    The Present Litigation

On May 30, 2006, the Plaintiff filed the present lawsuit, asserting causes of action for (1) breach of contract; (2) unfair and deceptive acts or practices in the business of insurance, in violation of N.C. Gen. Stat. § 58-63-15; and (3) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1, et seq.  [Doc. 1, Complaint at ¶¶ 7-19]. In its Complaint, the Plaintiff alleges that the Defendant sold and issued a policy of

commercial/business insurance to the Plaintiff and that such policy insured

certain property located at the Plaintiff's place of business at 377 Highway

70, Hickory, North Carolina.  [Id. at ¶ 8].  The Plaintiff further alleges that

on or about "August 3rd or 4th, 1999," the Plaintiff suffered a loss of that

allegedly insured property.  [Id. at ¶ 4].  Specifically, the Plaintiff claims that

on or about August 3, 1999, the Plaintiff's property was "damaged,

converted, destroyed and compromised such that Plaintiff incurred

significant losses and damages [to] its property."  [Id. at ¶ 9].  In support of

its breach of contract claim, the Plaintiff alleges that it has made demands

upon the Defendant for payment of benefits pursuant to the insurance

policy and that those demands were not honored.  [Id.].  Finally, the

Plaintiff alleges that the Defendant refused to pay "full payment" under the

insurance policy for the allegedly damaged property and "wrongfully

refused" to pay the Plaintiff for losses incurred.  [Id. at ¶¶ 11, 12].

## IV.    Analysis

The Defendant moves for summary judgment on three alternative

grounds.  First, the Defendant argues that the Plaintiff is precluded by the

doctrine of collateral estoppel from relitigating the issue of property

damage as it pertains to any of the Plaintiff's causes of action.  Second,

26

the Defendant argues that the Plaintiff's causes of action are barred by the applicable statutes of limitations.  Finally, the Defendant argues that summary judgment is warranted because Plaintiff cannot support each essential element of its causes of action.  The Court will address these arguments as they apply to each of Plaintiff's claims.

## A.    Breach of Contract Claim

The Plaintiff alleges that the Defendant breached the contract of insurance by wrongfully refusing Plaintiff's "demand for full payment under the said policy."  [Doc. 1, Complaint at ¶ 11].  The Defendant contends that the Plaintiff is precluded by the doctrine of collateral estoppel from relitigating the issue of property damage as it pertains to this breach of contract claim, and also asserts the defense of the statute of limitations.

## 1.    Collateral Estoppel

In this diversity action, the Court must apply North Carolina state law as it relates to the doctrine of collateral estoppel.  Graves v. Associated Transp., Inc., 344 F.2d 894, 896 (4th Cir. 1965); see also In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995) ("In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel.").

Under the doctrine of collateral estoppel, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of actions between the parties or their privies." Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). Collateral estoppel precludes parties "from retrying fully litigated issues that were decided in any prior determination, even where the claims asserted are not the same." McCallum v. North Carolina Co-op. Extension Serv., 142 N.C. App. 48, 51, 542 S.E.2d 227, 231, review denied, 353 N.C. 452, 548 S.E.2d 527 (2001). The doctrine is "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." King v. Grindstaff, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (quoting Commissioner v. Sunnen, 333 U.S. 591, 599 (1948)).

"In general, 'privity involves a person so identified in interest with another that he represents the same legal right." State ex rel. Tucker v. Frinzi, 344 N.C. 411, 417, 474 S.E.2d 127, 130 (1996) (quoting 47 Am. Jur. 2d Judgments § 663 (1995)). While the North Carolina Supreme Court has noted that "the meaning of 'privity' has proven to be elusive, and 'there is

no definition of the word . . . which can be applied in all cases,' the

prevailing definition in our cases, at least in the context of res judicata and

collateral estoppel, is that privity 'denotes a mutual or successive

relationship to the same rights of property.'" Whitacre Partnership v.

Biosignia, Inc., 358 N.C. 1, 36, 591 S.E.2d 870, 893 (2004)

(quoting Tucker, 344 N.C. at 416-17, 474 S.E.2d at 130).  Accordingly, in

determining whether privity exists, the Court should "look beyond the

nominal party whose name appears on the record as plaintiff and consider

the legal questions raised as they may affect the real party or parties in

interest."  Whitacre Partnership, 358 N.C. at 36, 591 S.E.2d at 893

(quoting State v. Summers, 351 N.C. 620, 623-24, 528 S.E.2d 17, 21

(2000)).

On the issue of whether privity exists between Classics and Amatulli

& Sons, the Court finds instructive the Sixth Circuit's recent unpublished

decision in Living Care Alternatives of Kirkersville, Inc. v. United States,

Nos. 05-4418, 06-3163, 06-3166, 2007 WL 2566032 (6th Cir. Sep. 5,

2007).  In that case, the plaintiffs, all long-term nursing care facilities,

appealed the imposition of an IRS tax levy against them.  The district court

concluded that two of the corporate taxpayers, Living Care Utica and Living

Care Kirkersville, were in privity and thus concluded that collateral estoppel barred the relitigation by Living Care Kirkersville of certain issues adjudicated in prior litigation involving Living Care Utica. In so ruling, the district court relied upon the fact that the companies had the same sole shareholder and officer, who had represented both of them in the administrative proceedings below. The Sixth Circuit rejected the district court's reasoning, concluding that although the sole shareholder may have had sufficient interest and control over the prior litigation such that privity existed between the shareholder and Living Care Utica, there was not sufficient evidence of privity between Living Care Utica and Living Care Kirkersville to apply collateral estoppel to this separate corporate entity. Specifically, the Sixth Circuit noted that Living Care Kirkersville "did not have a direct financial or proprietary interest in nor control over the prior Living Care Utica litigation as is necessary in order to impose privity . . . ." Id. at *11.

Like the corporate entities in the Living Care case, the two corporate entities in the present case are controlled by the same sole shareholder. The critical distinction, however, is that while there was no evidence in Living Care that Living Care Kirkersville had any financial or proprietary

interest in the prior litigation, the undisputed facts presented in this case show that Amatulli & Sons did have a financial and proprietary interest in the Classics litigation. Plaintiff concedes the fact that Amatulli had moved Amatulli & Sons inventory to the Classics store in order to secure a loan for Classics. Subsequently, Amatulli placed all of the inventory in the Classics store on the Amatulli & Sons insurance policy. Amatulli explained in his deposition that he did so because he was "absorbing" the Classics business into Amatulli & Sons. From that point on, Plaintiff presents no evidence that any distinction was ever made between the inventory which belonged to Amatulli & Sons and the inventory which belonged to Classics. The Plaintiff admits as much in its response to the Defendant's Motion for Partial Summary Judgment: "Rightful ownership involving the property was with Amatulli & Sons who at the time of seizure had taken possession of the assets of Classic[s]." [Doc. 30, Plaintiff's Response at 6]. Thus, while the Classics v. Ikerd litigation may have been pursued in the name of Classics, it is undisputed in the record before the Court that Amatulli & Sons was the real party in interest; it owned the inventory that was allegedly damaged, and it held the insurance policy which covered the inventory. It had effectively "absorbed" Classics and taken possession of

its assets.  Given these undisputed facts, the Court concludes that the interests of Classics and Amatulli & Sons were so in line that Classics' representation in the prior litigation effectively represented Amatulli & Sons' legal rights as well.  See Weinberger v. Tucker, __ F.3d ___, 2007 WL 4442449, at *3 (4th Cir. 2007) (applying collateral estoppel where chairman and majority stockholder's legal interests were effectively represented by corporation in prior litigation).  As such, these two entities were in privity for the purposes of the application of the doctrine of collateral estoppel to the present case.

Even if there were no privity between these corporate entities, the doctrine of collateral estoppel would still be applicable to the present case. While courts traditionally have limited the application of collateral estoppel to parties or those in privity with the parties to the previous action, North Carolina no longer requires this so-called "mutuality of estoppel."  McInnis, 318 N.C. at 434, 349 S.E.2d at 560.  Thus, a "litigant invoking collateral estoppel need not have been a party to or in privity with a party in the first lawsuit 'as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action.'" Johnson v. Smith, 97 N.C. App. 450, 453, 388 S.E.2d 582, 584 (quoting McInnis, 318 N.C. at

432, 349 S.E.2d at 559), review denied, 326 N.C. 596, 393 S.E.2d 878

(1990).  In the present case, the record makes clear that Amatulli & Sons

had a "full and fair opportunity" in the prior litigation to litigate the issue of

the amount of property damage incurred, and the Plaintiff has not asserted

any facts to the contrary.  Therefore, on these facts, the Court concludes

that the doctrine of collateral estoppel may be applied to the Plaintiff in the

present action.

The Plaintiff argues that collateral estoppel should not bar the

present action because the issues to be determined in this case are

entirely different from the issues present in the Classics v. Ikerd litigation.

Specifically, the Plaintiff contends that the issue in the prior litigation was

the extent to which the landlord was liable for the Plaintiff's damages,

whereas in the present case, the issue is whether the Plaintiff may recover

under its policy of insurance.  The Plaintiff further argues that the present

litigation seeks to recover for the *total* amount of damages to the Plaintiff's

property, whereas in the former case, the Plaintiff argues, the jury

determined only the amount for which the landlord was liable.

In making its argument, Plaintiff confuses the *claims* and the *issues*

presented.  Plaintiff is correct that the claims in this case are different from

those presented in <u>Classics v. Ikerd</u>.  Plaintiff, however, is precluded "from

retrying ... *issues* . . even where the claims asserted are not the same."

<u>McCallum</u>, 142 N.C. App. at 51, 542 S.E.2d at 231 (emphasis added).

While the Plaintiff is correct that its claim for recovery under the

insurance policy was not previously litigated in the former action, Plaintiff's

argument misses the point.  In order to determine whether the Plaintiff can

recover under the policy in question, the trier of fact will have to determine

what loss, if any, the Plaintiff has suffered as a result of any alleged

damage to its property.  That was precisely an issue that was addressed in

the prior litigation.

Plaintiff argues that the jury determined only the landlord's liability for

the damage and not the total amount of damages suffered, but this misses

the mark.  Plaintiff presents no forecast of evidence to this Court

suggesting that the Plaintiff has ever even alleged another cause of the

damage to its property other than the actions of the landlord.  Accordingly,

the jury's determination of the amount of damages caused by the landlord

is an adjudication of the amount of loss suffered as a result of the damage

to Plaintiff's property.

The Plaintiff further argues that collateral estoppel does not apply because the Classics trial did not address the continuing damage to the Plaintiff's property following the Judgment in that case. While the Plaintiff argues that damage continued to accrue, Plaintiff has not presented any forecast of evidence in the record which would support such a claim.[4] Accordingly, Plaintiff's argument on this point is without merit.

Finally, the Plaintiff contends that Defendant's payment of $41,295.87 is "an admission by Defendant that Plaintiff still had an insurable interest for which they [sic] owed him payment irregardless [sic] of Steve Ikerd's negligence . . . ." See Doc. 30, Plaintiff's Response at 8. However, Defendant's payment for a settlement of alleged damage to the subject property was made *with reservation of Defendant's rights* and therefore has no bearing on whether collateral estoppel bars the Plaintiff's claim.

---

[4]Plaintiff points to the affidavit testimony of Richard Amatulli to the effect that he observed the inventory "simply thrown in a large pile and . . . *therefore concluded that additional and continuing damage was occurring to my personal property* and that many of the items were continuing to disappear." [Doc. 32, Ex A., Amatulli Aff. at ¶ 18] (emphasis added). As noted earlier, this conclusory statement of Mr. Amatulli offers no specific facts. For that reason, this testimony is an inadequate forecast of *evidence* of continuing damage and has been stricken.

In sum, one of the issues presented in the present case is identical to the issue raised in the prior litigation of <u>Classics v. Ikerd</u>, namely, the amount of the loss suffered by the Plaintiff as a result of the damage to its property that was caused by the conduct of Ikerd and/or Catawba Furniture Mall on August 3 or 4, 1999. This issue was fully and fairly litigated in that prior action. The case was brought to trial and tried before a jury. The jury was specifically asked whether the Plaintiff's property was damaged by Ikerd and/or Catawba Furniture Mall, and the jury answered in the affirmative. They assessed the Plaintiff's resulting loss to be a total of $1.00. The adjudication of this issue was material to the disposition of <u>Classics v. Ikerd</u> and necessary and essential to the resulting Judgment therein. That Judgment is binding on the Plaintiff

For these reasons, the Court concludes that the Plaintiff is collaterally estopped from relitigating the issue of the amount of loss resulting from the damages to the insured property, as that matter was fully and fairly litigated in prior litigation. The gravamen of the Plaintiff's claim is that the Defendant wrongfully refused to pay the Plaintiff the full policy limits. As it has been conclusively determined that the Plaintiff suffered a loss of only $1.00, the Plaintiff's claim that Defendant owed the Plaintiff the full amount

of the policy limits must fail.  Accordingly, the Defendant is entitled to summary judgment on the breach of contract claim.

### 2.    Statute of Limitations

Even if the doctrine of collateral estoppel did not bar the Plaintiff's claim, the Court concludes that the breach of contract action would also be barred by the statute of limitations.

A court sitting in diversity must apply the state statute of limitations applicable to the plaintiff's actions.  Castillo v. Emergency Med. Assocs., P.A., 372 F.3d 643, 646 (4th Cir. 2004).  Accordingly, North Carolina law determines the applicable statute of limitations in this case.  Under North Carolina law, an action for breach of contract must be filed within three years of the accrual of the cause of action.  N.C. Gen. Stat. § 1-52(1).  "Generally, a cause of action accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises."  Liptrap v. City of High Point, 128 N.C. App. 353, 355, 496 S.E.2d 817, 819, review denied, 348 N.C. 73, 505 S.E.2d 873 (1998).  As the North Carolina Supreme Court has explained:

> [A]s soon as the injury becomes apparent to the
> claimant or should reasonably become apparent,

> the cause of action is complete and the limitation
> period begins to run.  It does not matter that further
> damage could occur; such further damage is only
> aggravation of the original injury.

Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 493, 329

S.E.2d 350, 354 (1985).  The statute of limitations begins to run in a

breach of contract action "on the date the promise is broken."  Liptrap, 128

N.C. App. at 355, 496 S.E.2d at 819.

Viewing the evidence in the light most favorable to the Plaintiff, the

Defendant's refusal to pay the full policy limits was known to the Plaintiff, at

the very latest, on May 31, 2002, when Attorney Daly advised the Plaintiff

of the Defendant's position that the Plaintiff had failed to document its

claim.  The Plaintiff did not file the present action until May 30, 2006,

almost four years later.  Accordingly, the Plaintiff's breach of contract claim

is also barred by the statute of limitations.

Based upon the operation of the doctrine of collateral estoppel, as

well as the applicable statute of limitations, the Court concludes that the

Plaintiff's breach of contract claim must be dismissed.

## B.    UDTPA Claims

The Plaintiff asserts two additional causes of action, one for unfair

and deceptive acts or practices in the business of insurance, pursuant to

N.C. Gen. Stat. § 58-63-15[5] and one for unfair and deceptive trade practices, pursuant to the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("UDTPA"). [Doc. 1, Complaint at ¶¶ 13-19]. Specifically, the Plaintiff alleges that the Defendant violated § 58-63-15 in the following ways:

(1) In refusing to honor a claim submitted for first party benefits within a reasonable time once proof of the claim was given;

(2) In unreasonably delaying payment of the Plaintiff's claim which to this date remains unpaid;

(3) In failing to communicate to the Plaintiff any reasonable justification for failing to honor the claim;

(4) In failing to attempt in good faith to effect a fair, prompt and equitable settlement of the claim;

(5) In compelling the Plaintiff to institute a lawsuit to recover lawful benefits due under the aforementioned policy;

---

[5]Defendant characterizes the Plaintiff's claim as one for "bad faith" under North Carolina common law and thus argues that Plaintiff's claim is barred by the three-year statute of limitations applicable to bad faith claims. See N.C. Gen. Stat. § 1-52(12). If Plaintiff's claim were couched in terms of common law bad faith, Defendant would be correct, and the claim should be dismissed. A plain reading of Plaintiff's Complaint, however, makes clear that the Plaintiff's claim is statutorily based. Accordingly, the Court will limit its analysis of the Plaintiff's claim to the statutory basis asserted, N.C. Gen. Stat. § 58-63-15.

(6)     In failing to fully investigate and review the claim to determine whether or not the claim came within the coverage afforded by the Defendant's policy;

(7)     In refusing to honor the claim as leverage to force the Plaintiff to concede that a small initial payment made by Defendant was in satisfaction of the majority of the Plaintiff's claim for damages; and

(8)     Throughout the course of deadlines between the Plaintiff and the Defendant, in acting negligent, in bad faith, and in reckless disregard of the rights of the insured.

[Id.].  The Plaintiff alleges that the Defendant violated UDTPA by "refusing to timely and adequately pay [its] contractual obligations [sic]."  [Id. at ¶ 19].

Section 58-63-15 defines various unfair or deceptive trade practices as including "unfair claim settlement practices," which is defined to include any of the following:

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

j. Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;

k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l. Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, o[r] either, . . . to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

N.C. Gen. Stat. § 58-63-15(11). However, the statute makes clear that only the Commissioner of Insurance may pursue a cause of action pursuant to this provision. See id. ("Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner."). Instead, a consumer may pursue an action against an insurance company for unfair or deceptive acts or practices in the settlement of an insurance claim under the UDTPA, N.C.

Gen. Stat. § 75-1.1, *et seq.*  See Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 71, 529 S.E.2d 676, 682 (2000) (finding evidence of conduct prohibited by § 58-63-15(11) "could support a finding of unfair or deceptive acts or practices under Chapter 75").  Thus, even though the Plaintiff has couched its claim in terms of a claim under § 58-63-15, the Court will analyze that claim as one brought pursuant to the UDTPA.  To the extent that the Plaintiff seeks to assert a claim under § 58-63-15 separate and apart from the UDTPA claim, such does not state a claim under the statute and should be dismissed.

To the extent that the Plaintiff has stated a claim under UDTPA, such claim is not timely.  The statute of limitations for a UDTPA claim is four years.  N.C. Gen. Stat. § 75-16.2.  The cause of action accrues when the violation of the statute occurs.  See United States v. Ward, 618 F. Supp. 884, 902 (E.D.N.C. 1985).  Viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff alleges that the Defendant committed several separate unfair and deceptive acts.  Virtually all (if not all, see infra) of this alleged conduct, however, occurred prior to May 30, 2002 (four years prior to filing), and thus, all claims based on such prior acts are time barred.

Based upon the record before the Court, the only allegedly wrongful conduct of the Defendant that occurred after May 30, 2002, which Plaintiff claims to be wrongful, was the letter sent by Attorney Daly on May 31, 2002, in which she advised the Plaintiff that the Defendant had rejected the Plaintiff's claim for further payment under the policy due to the Plaintiff's failure to document its claim properly.  As such, any claim based on the writing of this letter would not be barred by the statute of limitations, unless a jury determines there was earlier notice to the Plaintiff of any such wrongful act.   Even though this raises a genuine issue of fact, it is not an issue of *material* fact.  Any claim based on this letter is one based on a wrongful failure of the Defendant to pay amounts due to the Plaintiff under the policy, and for the reasons stated above, the doctrine of collateral estoppel bars any such claim, because it has been conclusively determined against the Plaintiff that its recoverable loss was less than the payment tendered by the Defendant.  The Plaintiff has presented no evidence of any other damages it claims to have suffered as a proximate result of the Defendant's allegedly wrongful conduct.  This claim must, therefore, fail as a matter of law.

Even if collateral estoppel did not completely bar this claim, the Court would still conclude summary judgment is appropriate because this correspondence does not provide support for Plaintiff's UDTPA claim. To establish a claim under the UDTPA, the Plaintiff must show: (1) that the Defendant engaged in an unfair or deceptive act or practice; (2) that the Defendant's conduct was in or affecting commerce; and (3) that the conduct was the proximate cause of an injury to the Plaintiff. See Blis Day Spa, LLC v. Hartford Ins. Group, 427 F. Supp. 2d 621, 634 (W.D.N.C. 2006). The determination of whether the defendant's conduct constitutes a "unfair or deceptive act or practice" is a question of law for the Court. Id. The North Carolina Supreme Court has held that conduct is considered an "unfair act or practice" when the conduct "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A "deceptive act of practice" is one that "possessed the tendency or capacity to mislead, or created the likelihood of deception . . . ." Id.

The May 31, 2002 letter reflects the Defendant's reasonable belief that the Plaintiff had not properly documented its claim because it had

failed to provide proof of ownership of all of the inventory alleged to be damaged or lost.  Further, the letter acknowledges the Plaintiff's objections to the assessment performed by Comprehensive Inventories and explains why the Defendant disagrees with each of these objections.  The letter further indicates that the Defendant would consider additional information subsequently presented by the Plaintiff in the continuing evaluation of the Plaintiff's claim.

Despite the jury's conclusive finding that the Plaintiff incurred only $1.00 in damages to its property, the Defendant paid the undisputed amount of the claim as assessed by Comprehensive Inventories.  Further, the Defendant clearly advised the Plaintiff, through the letter of May 31, 2002, of the grounds for its decision not to pay the full policy limits. See Blis, 427 F. Supp. 2d at 635 (granting summary judgment on UDTPA claim where insurer paid all undisputed amounts and communicated the basis for its dispute of insured's claims).  The Plaintiff has failed to present a sufficient forecast of evidence to support a UDTPA claim.  For these reasons, the Court concludes that summary judgment is appropriate with respect to these claims as well.

# O R D E R

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Partial Summary Judgment [Doc. 24] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Strike Portion of Affidavit and Portions of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment [Doc. 39] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 54] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**, and judgment shall issue simultaneously herewith.

Signed: January 8, 2008

Martin Reidinger
United States District Judge